**In re Tricia MUNIZ, Debtor.**

**Jeffrey L. Hill, Trustee, Plaintiff,**

v.

**Tricia Muniz, Defendant.**

**Bankruptcy No. 03–35716 HRT.**
**Adversary No. 04–1769 HRT.**

United States Bankruptcy Court,
D. Colorado.

Jan. 19, 2005.

Jeffrey L. Hill, Trustee, Parker, CO, pro se.

Tricia Muniz, Arvada, CO, pro se.

### ORDER REVOKING DISCHARGE AND GRANTING JUDGMENT

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court on Trustee's Complaint (Revocation of Discharge). A trial of the issues raised in the Complaint was held on January 12, 2005. Plaintiff and Defendant both appeared *pro se*.

Trustee seeks revocation of Debtor's discharge under 11 U.S.C. § 727(d) on the basis that Debtor refused to obey this Court's order to turn over non-exempt property to the Trustee. In addition, Trustee seeks judgment against Debtor for the amount of her non-exempt property.

#### Facts

1.  Debtor filed her bankruptcy petition on December 31, 2003. Her meeting of creditors was held on February 4, 2004.

2.  A Trustee's Information Sheet, completed at the meeting by the Trustee and the Debtor and signed by the Debtor, indicates that as of the petition date: 1) Debtor's approximate credit union account balance was $125.00; 2) she was owed accrued vacation pay of $1,045.00; and 3) she was owed wages of $1,540.00. The Information Sheet also shows that

Debtor had not yet filed her year 2003 income tax returns.

3. Two days after the creditors meeting, Trustee wrote to the Debtor requesting that she enter into a Stipulation for Turnover of: 1) year 2003 federal income tax refund; 2) year 2003 state income tax refund; 3) $125.00 credit union account balance; 4) the non-exempt portion of unpaid wages in the amount of $385.00; and 5) the non-exempt portion of accrued vacation pay in the amount of $261.25.

4. The Debtor did not sign and return the Stipulation.

5. Trustee sent follow-up letters to the Debtor on March 17, 2004, and May 21, 2004, requesting return of the Stipulation and informing the Debtor that serious consequences would result from failure to turn over her non-exempt property to the Trustee, including the possible revocation of her discharge.

6. Debtor failed to enter into the requested Stipulation.[1]

7. On June 29, 2004, Trustee filed his Motion to Compel Debtor's Turnover of Miscellaneous Non-exempt Property of the Estate Pursuant to 11 U.S.C. § 521(4), 542.

8. On June 30, 2004, without a hearing, the Court entered the Turnover Order. Debtor did not contest the Turnover Order.

### Discussion

■ When a debtor files a bankruptcy petition under chapter 7, that debtor is bound by law to turn over to the bankruptcy trustee all property, if any, which may not be claimed as exempt. It is the trustee's responsibility to liquidate non-exempt property for the purpose of making a distribution to creditors. In exchange for that turnover of property, the debtor is granted the extraordinary relief of receiving a discharge of debts which generally cannot be satisfied in full by that distribution from the trustee. Those persons who seek the extraordinary relief of a bankruptcy discharge may not ignore their legal obligations to the court and the trustee and still expect to receive a discharge of debt.

### The Turnover Order and 11 U.S.C. § 727(d)(3)

This matter has caused the Court to examine its procedure for granting motions for turnover. The Court finds that its past practice lacks sufficient procedural safeguards to insure that such orders are not entered under circumstances where the debtor lacks the present ability to comply with the order. The Court will revise that procedure in the future. However, the Court's decision in this case is not based on the mere failure to comply with the Turnover Order. The evidence at trial demonstrated that Debtor knowingly and fraudulently received, and failed to surrender, property of the estate. Thus, revocation of discharge is appropriate notwithstanding that the original Turnover Order was improvidently granted.

■ For an order for turnover to be appropriate, it is necessary that a trustee demonstrate, not only that the debtor received or had possession of estate proper-

---

1. Bankruptcy trustees typically request that debtors who are in possession of non-exempt property of the estate enter into an agreement to turn over that property. Those stipulated agreements insure that debtors are informed and fully aware of their obligations. However, they merely reflect a debtor's duties under the Bankruptcy Code and generally do not alter a debtor's responsibilities under the law.

ty, but also that the debtor was in possession of the property, or its value, at the time the turnover motion was filed. The U.S. Supreme Court has said that the trustee must provide "proof that the property has been abstracted from the bankrupt estate and is in the possession of the party proceeded against. It is the burden of the trustee to produce this evidence, however difficult his task may be." *Maggio v. Zeitz,* 333 U.S. 56, 63, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948); *see, also, Hager v. Gibson,* 109 F.3d 201, 210 (4th Cir.1997) ("Present possession, either actual or constructive, of the property or its identifiable proceeds, by the person from whom its turnover is sought, is required for recovery under this section."); *Lawrence v. Chapter 7 Trustee (In re Lawrence),* 251 B.R. 630, 639 (D.Fla.2000) ("It is important for the court to consider the whole record and to exercise reason and sound judgment, 'mindful that the order should issue only as a responsible and final adjudication of possession and ability to deliver, not as a questionable experiment in coercion which will recoil to the discredit of the judicial process if time proves the adjudication to have been improvident and requires the courts to abandon its enforcement.' ") (quoting *Maggio,* 333 U.S. at 67, 68 S.Ct. at 407).

■ In this case, the allegations made in the Trustee's original Turnover Motion do not measure up to that standard. The motion merely identified the non-exempt property. It made no allegation that the Debtor was in possession of those funds at the time the motion was filed. Indeed, at least with respect to accrued vacation pay, the Court doubts that the Trustee could have made such an allegation in good faith.

For these reasons, the Court has discounted the effect of its earlier Turnover Order in reaching its decision in this matter.[2]

■■ The Trustee has requested revocation of discharge based upon the Debtor's refusal to comply with the Court's Turnover Order issued on June 30, 2004. Under 11 U.S.C. § 727(d)(3), "the court shall revoke a discharge granted under ... [section 727(a)] if ... the debtor committed an act specified in subsection (a)(6) of [section 727]." Section 727(a)(6) specifies that "[t]he court shall grant the debtor a discharge, unless ... the debtor has refused, in the case ... to obey any lawful order of the court, other than an order to respond to a material question or to testify." Thus, a debtor's refusal to comply with a properly granted order for turnover provides a basis for the denial or revocation of discharge. But, in this case, because the Court disregards the Turnover Order issued on June 30, 2004, it will not grant revocation of discharge based on the Debtor's refusal to comply with that order.

### 11 U.S.C. § 727(d)(2)

■ Under 11 U.S.C. § 727(d)(2), "the court shall revoke a discharge granted under ... [§ 727(a)] if ... the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee."

The Debtor's non-exempt property consists of accrued wages; accrued vacation pay; income tax refunds; and her account

---

**2.** The fact that a trustee cannot demonstrate a debtor's possession of estate property at the time the turnover action is filed merely means that his remedy becomes a money judgment for the value of the estate property rather than an order for turnover. *See, e.g., In re Gentry,* 275 B.R. 747, 751 (Bankr.W.D.Va. 2001); *In re Lawrence,* 251 B.R. at 639; *Boyer v. Davis (In re U.S.A. Diversified Prod., Inc.),* 193 B.R. 868, 879 (Bankr.N.D.Ind.1995).

balance at her credit union. All of such non-exempt property is property of the Debtor's bankruptcy estate. There was no evidence at trial as to when or if the debtor received the wages, or vacation pay. Nor was evidence presented with respect to the disposition of Debtor's bank balance.

But, the evidence does amply demonstrate that Debtor received and failed to turn over state and federal income tax returns in the total amount of $1,618.00. Debtor had no entitlement whatever to do anything with those funds other than turn them over to the Trustee. Those funds never belonged to the Debtor. They were, quite simply, property of the bankruptcy estate in which the Debtor had no rights at all. Yet, she used those funds for her own purposes. Under § 727(d)(2), a knowing and fraudulent misappropriation of estate property establishes the Trustee's right to obtain an order providing for revocation of the Debtor's discharge.

The Debtor was not represented by an attorney in this proceeding. Despite her lack of familiarity with bankruptcy law, Debtor was put on notice of her obligations. It is typical that bankruptcy trustees inform debtors of their obligation to safeguard and immediately turn over income tax returns at the creditors meeting. While the Court has no evidence of the Trustee's efforts in this regard at the creditors meeting in this case, the Court has ample evidence that the Debtor was put on notice of those obligations by the Trustee's stipulation request, and by the Trustee's subsequent correspondence. Even if the Debtor's ignorance of the law could excuse her behavior, the Court is satisfied that she received sufficient notice of her obligations to nullify any claim of ignorance. Furthermore, her failure to sign and return the Trustee's turnover stipulation, despite numerous requests, is tangible evidence of her lack of intention, from early

in the case, to honor her obligations under the Bankruptcy Code.

From the evidence adduced at trial, the Court finds that the Debtor acquired and failed to surrender property of the estate in the form of income tax refunds in the amount of $1,618.00. The evidence also indicates that the Debtor's refusal was willful and done with full knowledge and apparent disregard of the consequences. The record is simply devoid of any good-faith efforts on the Debtor's part to comply with her legal obligations under the Code to surrender her tax refunds to the Trustee.

■ The Court may infer the knowing and fraudulent nature of the Debtor's failure to turn over her refunds from her course of conduct. *In re Yonikus,* 974 F.2d 901, 905 (7th Cir.1992); *Farmers Co-op. Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982). As noted above, the evidence amply demonstrates the Debtor's knowledge of her obligation to surrender income tax refunds to the Trustee when they were received and her failure to do so. The Court infers the fact that Debtor fraudulently intended to deprive the estate of those funds by her failure to inform the Trustee of her receipt of the refunds and her refusal to enter into the standard agreement to turn over her refunds after the Trustee made repeated requests for her to do so. *See Olsen v. Reese (In re Reese),* 203 B.R. 425, 431 (Bankr.N.D.Ill. 1997) (The court inferred fraudulent intent from debtors' failure to disclose entitlement to, and post-petition receipt of, income tax refunds and failure to timely provide tax return documents.).

Much of Debtor's argument at trial centered upon her inability to pay the value of her non-exempt property to the Trustee and the Trustee's alleged unwillingness to take monthly payments from her. But that argument is quite beside the point

with respect to the tax refunds. The Debtor had possession of those refund amounts; knew of her obligation to turn them over to the estate; and chose to do otherwise. Debtor's offer at trial to pay $100.00 per month to the Trustee truly is too little and far too late.

### Trustee's Request for Judgment

■ The fact that Debtor's discharge is revoked does not nullify the legal obligations which she voluntarily invoked upon the filing of her bankruptcy petition. She is still obligated to pay over to the Trustee the value of the non-exempt property which she possessed or was entitled to receive as of her petition date on December 31, 2003. *See, e.g., Miller v. Kasden (In re Kasden)*, 209 B.R. 239 (8th Cir. BAP 1997) (affirms bankruptcy court order revoking discharge and entering judgment for turnover of concealed assets); *Krommenhoek v. Covino (In re Covino)*, 241 B.R. 673 (Bankr.D.Idaho 1999) (court ordered discharge revocation and judgment for value of misappropriated assets).

The Trustee has requested that the Court reduce to judgment the amount of $2,389.25 which represents the value of the non-exempt portion of accrued wages, accrued vacation pay, credit union account balance, and tax refunds. The Court finds that those items are all property of the bankruptcy estate which the Debtor is obligated to pay over to the Trustee. Therefore, a money judgment shall enter, as requested by the Trustee, in the amount of $2,389.25.

### Conclusion

The Court is not unmindful of the fact that revocation of discharge is a harsh measure. Nonetheless, it is axiomatic that the extraordinary relief of a bankruptcy discharge is reserved for the honest but unfortunate debtor.[3] The Congress could not have expressed its will more clearly than it did in § 727. A debtor who does not honor her obligations to turn over estate property is not a debtor to whom this Court is empowered to grant a discharge.

Sadly, this Debtor chose to proceed with the filing of a bankruptcy case without the benefit of bankruptcy counsel. She is one of a growing number of individuals (currently about 15% in this district) who attempt to act as their own attorney. That decision has proven to be extraordinarily unfortunate. This case illustrates a "perfect storm" of bad consequences: the Debtor loses her discharge; she still has a judgment against her in favor of the Trustee for the value of property she failed to surrender to him; and the $21,000 plus of unsecured debt which the Debtor listed in her schedules may not be subject to discharge in any subsequent chapter 7 bankruptcy proceeding. The few hundred dollars that the Debtor saved by not hiring competent counsel is small compared to the amount of debt for which she will continue to be held responsible.

In this Court, as in other federal courts, the pleadings of *pro se* litigants receive a liberal construction. The submissions of a *pro se* party are not held to the same technical and procedural requirements as the submissions of licensed attorneys.[4]

3. "[The] purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

4. It is plain that the Debtor believes she has been poorly treated by the Trustee, but the fact is that she received deference from the

*Gillihan v. Shillinger,* 872 F.2d 935, 938 (10th Cir.1989) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)). At the same time, the Court does not, and cannot, act as advocate of an unrepresented party. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) ("we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant"). It is simply not part of the Court's role to attempt to negotiate a deal with the Trusteé on the Debtor's behalf. While the Court can think of several ways the Debtor may have acted at an earlier stage of these proceedings to avoid the result that the Court reaches today, at trial, the Court is charged with considering the evidence and applying the law. The result is regrettable in that it could have been avoided. But it is also the inevitable result of the Debtor's deliberate actions in the face of her knowledge of her obligations under the law.

Therefore, it is

**ORDERED** that the Discharge of Debtor issued in case number 03–35716–HRT on April 21, 2004, is hereby REVOKED. It is further

**ORDERED** that judgment shall enter in favor of Jeffrey L. Hill, Trustee, and against Tricia Muniz in the amount of $2,389.25 plus the cost of suit in the amount of $150.00 with interest to run from and after the date of judgment at the federal judgment rate.

---

Trustee based on her *pro se* status. While the Debtor made no formal claim of exemption for any part of unpaid wages or vacation pay, the Trustee did not stand on that formality. He only requested turnover of the amount that the Debtor could not have claimed as exempt even if she had known of, and properly exercised, her right to claim the exemption. Nor did he object to the admission of the Debtor's exhibits at trial even though he could have, based upon the Debtor's failure to comply with the Court's pre-trial orders and the rules of evidence.