In re Jose L. RUIZ, also known as Joe Ruiz, and Carrie Ruiz, also known as Carrie Lee Ruiz, Debtors.

Gary E. Jubber, Trustee, Appellant,

v.

Jose L. Ruiz and Carrie Ruiz, Appellees.

BAP No. UT–10–069.
Bankruptcy No. 10–25368.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 17, 2011.

David R. Hague (Gary E. Jubber, Trustee, and Ashton J. Hyde with him on the brief) of Fabian & Clendenin, Salt Lake City, UT, for Appellant.

T. Jake Hinkins of Hinkins Law, LLC, South Jordan, UT, for Appellees.

Before CORNISH, Chief Judge, BROWN, and KARLIN, Bankruptcy Judges.

OPINION

KARLIN, Bankruptcy Judge.

Appellant, Gary E. Jubber, Trustee (the "Trustee"), appeals the bankruptcy court's decision denying his motion to require Appellees, Jose L. Ruiz and Carrie Ruiz ("Debtors"), to turn over estate assets. After oral argument and a review of the record, we reverse the order of the bankruptcy court.

## I. BACKGROUND

During the one month period preceding the filing of their Chapter 7 bankruptcy petition, electronically filed on Saturday, April 24, 2010, Debtors wrote four checks on a checking account they held at Zions Bank (the "Zions account"). These four checks were in the following amounts and designated purposes: 1) $2,196.50 on March 29, 2010 to purchase hay used in Debtors' business; 2) $200.00 on April 1, 2010 for a charitable donation; 3) $240.00 on April 16, 2010 for a business purpose; and 4) $1,118.47 on April 23, 2010 to pay Debtors' monthly mortgage payment. None of these checks had been honored by Zions Bank on the date they filed their petition.

Debtors filed their Schedules of Assets and Liabilities, Statement of Financial Affairs, and Statement of Social Security Number (which contains only the last four digits of that number) with their petition. On the schedules, Debtors listed various checking and savings accounts, including the Zions account. Debtors indicated under penalty of perjury that the Zions account balance on the date of filing was $10.02. In reality, there was $3,764.99 in the account, because none of the four checks had been honored. All four checks then cleared within four days of the filing: one check cleared the account on Monday,

April 26, two cleared on Tuesday, April 27, and the last cleared one day later, on Wednesday, April 28.

The Trustee was appointed as the panel Chapter 7 Trustee on the same date the petition was filed.[1] He conducted a first meeting of creditors pursuant to 11 U.S.C. § 341[2] on June 10, 2010. During or before that § 341 meeting, the Trustee discovered that none of these checks had cleared the Zions account prior to the filing date.[3] As a result, the Trustee filed a motion to require Debtors to turn over the amount that had been in the Zion account on the date of the petition.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from final judgments and orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[4] Neither party elected to have this appeal heard by the United States District Court for the District of Utah. The parties have, therefore, consented to appellate review by this Court.

The Trustee filed his notice of appeal within fourteen days of the bankruptcy court's Memorandum Opinion denying the Motion for Turnover, and therefore the appeal was timely.[5]

## III. STANDARD OF REVIEW

 "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo* ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')."[6] The parties agree, as does this Court, that this appeal involves only questions of law. Therefore, the matter is subject to a *de novo* review. *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[7]

## IV. BANKRUPTCY COURT DECISION

The bankruptcy court, while recognizing a split in authority on this issue, held that the Trustee could not recover from Debtors the amount that was in the checking account on the date of filing. Although the court recognized that the Debtors' interest in the account on the date of filing became property of the estate, it dismissed the Trustee's contention that the funds in the checking account constituted estate prop-

---

1. There is no evidence in the record when this Trustee received actual notice that he had received his appointment.

2. All future statutory references are to the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101–1532 (2005), unless otherwise specifically noted.

3. The Trustee only seeks turnover of $3,524.99, or $240.00 less than the actual account balance on the date of filing. Although the record does not reveal why the Trustee sought this lesser amount, this difference is immaterial to the issue of whether the Trustee can succeed on his motion for turnover.

4. 28 U.S.C. § 158(a)(1), (b)(1) and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

5. Fed. R. Bankr.P. 8002(a).

6. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see* Fed. R. Bankr.P. 8013; *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996).

7. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

erty. Instead, the bankruptcy court held that the checking account merely constituted a debt owed by the bank to the Debtors, and it was the right to collect on this debt, rather than the funds themselves, that constituted property of the estate.[8]

Having determined that it was only the right to collect on a promise to pay from Zions Bank to the Debtors that constituted property of the estate, the bankruptcy court then turned to the issue of whether Debtors had any duty to collect on that promise to pay for the benefit of the estate. The bankruptcy court held that Debtors had constructively turned over this property by disclosing to the Trustee in their schedules the existence of the checking account. The court then held that the Debtors were under no duty to collect on debts owed to the bankruptcy estate, and that it was the Trustee's obligation to collect on that debt, either directly from Zions Bank if he sought turnover, or from the payees of the funds through avoidance proceedings. Based on these findings, the bankruptcy court denied the motion for turnover.

## V. DISCUSSION

The starting point for analyzing the Trustee's motion for turnover is with the language of the pertinent statute, 11 U.S.C. § 542(a), which provides that "an entity . . . in possession, custody, or control, during the case, of property [of the estate] . . . shall deliver to the trustee . . . such property or the value of such property[.]" According to the Trustee, because Debtors were in control of the funds contained in their checking account on the

date they filed their petition, the Trustee may properly seek turnover of those funds directly from Debtors for ultimate distribution to their creditors. Debtors deny that they were in control of the funds in the checking account, and more importantly, that they have any duty to repay those funds.

### A. The funds in the checking account were property of the bankruptcy estate.

■ The first question is what precisely constituted property of the bankruptcy estate on the date of filing. The bankruptcy court held that it was only Debtors' right to collect on a debt from the bank that constituted property of the estate, not the funds themselves. This Court disagrees.

The primary basis for Debtors' contention, as well as the bankruptcy court's holding, that the estate's interest in the checking account amounted to nothing more than a beneficial interest in Zions Bank's promise to pay the funds held in the account (as opposed to the money in the account), is derived from language contained in *Citizens Bank of Maryland v. Strumpf.*[9] In *Strumpf*, a Chapter 13 debtor had both a checking account and a delinquent loan with the creditor bank on the date he filed his petition. When the petition was filed, the bank placed an administrative hold on that part of the funds contained in the checking account required to offset any pre-petition debt that debtor owed the bank on the loan. The debtor brought an action against the bank, alleging that the bank had violated the automatic stay under § 362(a)(7), because the "administrative hold" was actually an im-

---

8. *See In re Ruiz,* 440 B.R. 197, 201 (Bankr. D.Utah 2010) (noting that "Zions Bank was in possession, custody and control of the funds on deposit and the funds belonged to Zions Bank on the petition date. The Debtors were

in possession, custody, and control of a promise to pay from the bank to the Debtors.").

9. 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

proper "setoff" of the debtor's funds in violation of the automatic stay.

The Supreme Court held that the bank's actions did not constitute a setoff, and thus it had not violated the automatic stay.[10] Following that holding, the Court also briefly dismissed the debtor's contentions that the bank had violated § 362(a)(3) and § 362(a)(6), noting that the bank did not actually take possession of any of the debtor's property or exercise control over debtor's property. Instead, the Court held that the bank merely failed to perform its promise to pay the debtor the funds held in the account.[11]

Although this Court recognizes that the language contained in the concluding paragraph of *Strumpf* does facially support Debtors' position, the context of that case is entirely different from the case currently before this Court. *Strumpf* solely involved the automatic stay and the relationship between the bank and the debtor in that context. The issue of what constituted property of the estate under § 541 was neither argued nor decided. For that reason, this language in *Strumpf* is not dispositive under the facts, or the issue presented, in this case.

The relationship between Zions Bank and Debtors was considerably different than the typical debtor-creditor relationship that existed in *Strumpf*. Debtors maintained the right to withdraw the funds in their account at any time, to direct Zions Bank to deliver the funds to any third party, or to leave the funds on deposit. Although Zions Bank did make a promise to pay the funds in the account to Debtors, the checking account constituted much more than that promise and Debtors' rights to those funds exceeded those of a typical creditor.

■ Well established Tenth Circuit precedent directs that "the scope of section 541 is broad and should be generously construed[.]"[12] The bankruptcy court's attempts to narrow the scope of § 541 in relation to funds on deposit in a checking account does not satisfy the standard the Court must apply when considering § 541. Given the limited applicability of *Strumpf* to the facts of this case, and the broad scope the Court is required to use in applying § 541, the Court adopts the prevailing view of nearly every court to consider this issue by holding that the funds in the Zions account, rather than merely the promise to pay over those funds, constituted property of the bankruptcy estate.[13]

**10.** *Id.* at 19–20, 116 S.Ct. 286.

**11.** *Id.* at 21, 116 S.Ct. 286 (noting that a bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor").

**12.** *Williamson v. Jones (In re Montgomery),* 224 F.3d 1193, 1194 (10th Cir.2000).

**13.** *See, e.g., In re Pyatt,* 486 F.3d 423, 427 (8th Cir.2007) ("the funds transferred by the [prepetition] checks are property of the estate"); *In re Brubaker,* 426 B.R. 902, 905 (Bankr. M.D.Fla.2010), *aff'd,* 443 B.R. 176 (M.D.Fla. 2011) ("both schools [of thought] agree that the funds are property of the estate"); *Yoon v. Minter–Higgins,* 399 B.R. 34, 42–44 (N.D.Ind. 2008) (holding money in the debtors' bank

account on the petition date became property of the estate); *In re Parsons,* No. 05–00321, 2006 WL 3354513, at *1 (Bankr.S.D.Ind. Nov. 17, 2006) ("Funds on deposit in a debtor's checking account . . . on the petition date are property of the bankruptcy estate."); *In re Schoonover,* No. 05–43662–7, 2006 WL 3093649, at *2 (Bankr.D.Kan. Oct. 30, 2006) ("This Court has located eight decisions that address this issue. As a threshold matter, all eight decisions agree that the money [in the checking account] is property of the estate."); *In re Spencer,* 362 B.R. 489, 491 (Bankr.D. Kan. 2006) ("the funds remained in [the debtors'] possession and control at the date of the petition, were property of the estate, and were therefore subject to turnover."); *In re Sawyer,* 324 B.R. 115, 121 (Bankr.D.Ariz.2005) ("Indeed, a review of Section 541 provides that

**B. Debtors had control over the funds in the checking account "during the case."**

■ The Court next turns to the question of whether Debtors had "possession, custody, or control" of the property "during the case," such that they can be required to turnover the property, or its value, to the Trustee pursuant to § 542(a). There is no question Debtors had neither actual "possession" nor "custody" of the funds in the checking account "during the case." Undoubtedly Zions Bank, and later the entities that received the funds from the account post-petition, are the only entities that would satisfy those requirements. However, Debtors most certainly had "control" over the funds "during the case," as § 542(a) requires.

At any time prior to the filing of the petition, and up to the time the funds were withdrawn by the third parties to whom Debtors had written pre-petition checks, Debtors had the ability to withdraw all funds in their account, to close the account, to stop payment on any outstanding checks, and to transfer the funds from the account to another account. There can really be no question that these Debtors had nearly total control over these funds on the date they filed the petition, and this control extended through the following Monday for one check, Tuesday for two checks, and Wednesday for the last of those checks.

■ This leaves the final question of whether that control, which lasted for at least two days after the case was filed, constitutes control "during the case," which is required by § 542(a). Although a handful of courts have held that an entity must have current possession of the actual funds at the time the trustee makes the demand for turnover,[14] most courts have held that the requirement for turnover under § 542(a) should apply to any entity that held the estate's property at any time during the pendency of the case.[15] As noted by the Seventh Circuit Court of Appeals in *Diversified Products,*

> The statute ... requires the delivery of the property or the value of the property. Otherwise, upon receiving a demand from the trustee, the possessor of property of the debtor could thwart the demand simply by transferring the property to someone else. That is not what the statute says ... and can't be what it means.[16]

In *In re Majors,*[17] admittedly an unpublished decision, another panel of this Court held that § 542(a) does not require current possession, so long as the trustee can establish that an entity held the estate property at some point during the pendency of

---

the collected funds in the Debtor's account became property of the bankruptcy estate either pursuant to Section 541(a)(1) or (a)(2)"); *In re Taylor,* 332 B.R. 609, 611 (Bankr. W.D.Mo.2005) ("property of the estate includes the funds in the account"); *In re Dybalski,* 316 B.R. 312, 316 (Bankr.S.D.Ind. 2004) ("the Funds are property of the estate").

**14.** *See, e.g., In re Pyatt,* 486 F.3d at 429 (holding that an entity must have possession of the estate property to the time of the turnover proceeding to be liable for turnover under § 542(a)).

**15.** *See, e.g., Beaman v. Vandeventer Black, LLP (In re Shearin),* 224 F.3d 353, 356 (4th Cir. 2000) (holding that current possession is not a prerequisite for a turnover demand and that a trustee need only show "possession, custody or control" at some point "during the case") and *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.),* 100 F.3d 53, 55 (7th Cir.1996).

**16.** *Diversified Prods.,* 100 F.3d at 56 (emphasis and citation omitted).

**17.** *Rajala v. Majors (In re Majors),* 330 B.R. 880, 2005 WL 2077497 (10th Cir. BAP 2005).

.

the case—including immediately following the filing of the petition. This panel affirms the holding in *In re Majors* that "[t]he obligation to turnover extends not just to property presently in someone's possession, custody or control but to property in its 'possession, custody or control during the case.'"[18] This Court shares the concern expressed in *Majors* that "if a lack of present possession, combined with an explanation, constituted sufficient compliance, little, if any, purpose would be served by the statutory alternative of requiring delivery of 'the value of such property.'"[19]

■ In fact, if the statute is read to require current possession of the property, the language allowing a trustee to alternatively recover "the value of the property" would become superfluous, as the trustee could only recover the property itself. It is an elementary canon of statutory construction that "a statute should be interpreted so as not to render one part inoperative."[20]

We do wish to address one argument in support of requiring current possession of property in a turnover action under § 542(a), which was raised by the Eighth Circuit Court of Appeals in *In re Pyatt*,[21] and which Debtors here argue. In *In re Pyatt*, the court held that current possession or control was necessary to avoid the possibility of double recovery by the trustee. In other words, *In re Pyatt* suggests

that if current possession was not required, a trustee could, under our facts, require the Debtors to turnover the $3,764.99 under § 542, then immediately turn around and file avoidance actions against the check recipients under § 549, thus doubling this single asset for the benefit of the estate.

The Eighth Circuit noted that § 550(d) specifically limits a trustee to a single recovery in actions under §§ 544, 545, 547–549, 553(b) and 724(a), but makes no mention of such a limitation for actions under § 542(a). The court inferred from that language that "[t]he absence of such a prohibition suggests that the drafters did not intend to authorize a trustee to proceed under § 542(a) against everyone who may have had control over property of the estate at some point after the petition was filed."[22]

Although at first glance this appears to be a strong argument in favor of Debtors' position that current possession or control is required, a closer examination shows at least two flaws in this argument. First, it would be extremely unusual for § 542(a) to be referenced in § 550(d), as a matter of statutory construction. Every other statutory provision that is limited by § 550(d) relates to the Trustee's powers to avoid transfers for the benefit of the estate. Unlike §§ 544, 545, 547–549, 553(b) and 724(a), § 542(a) is not an avoidance provision. It requires turnover of estate prop-

---

18. *Id.* at \*3.

19. *Id.* (quoting *Boyer v. Davis (In re U.S.A. Diversified Prods., Inc.)*, 193 B.R. at 874–75, aff'd sub nom. *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53 (7th Cir. 1996)). *See also Hill v. Muniz (In re Muniz)*, 320 B.R. 697, 700 n. 2 (Bankr.D.Colo.2005) (holding the fact a trustee cannot demonstrate a debtor's possession of estate property at the time of turnover action merely means that his remedy becomes a money judgment for the

value of the estate property, rather than an order for turnover).

20. *Dept. of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 333, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994).

21. *In re Pyatt*, 486 F.3d 423, 427 (8th Cir. 2007).

22. *Id.* at 427–28.

erty and places the burden on those who have possession, custody, or control over estate property to turn it over to the trustee. Therefore, little, if anything, should be read into the failure to include § 542(a) in the provisions of § 550.

Secondly, the Eighth Circuit's concerns about the potential for a double recovery by the trustee are not entirely remedied by the holding that an entity must have current possession, custody, or control over estate property to be subject to a turnover action by a trustee. For example, in a case where funds remain in a checking account on the date a trustee seeks turnover, both the bank (which would currently be in *possession* of the funds) and the debtor (who would currently be in *control* of the funds) could be the subject of the trustee's turnover demand. So the double recovery the *In re Pyatt* court feared could still occur under its interpretation.

As the Trustee in this case noted at oral argument, no trustee seeks to recover the same asset twice, but they most assuredly want to collect it once. In addition, if a trustee sought a double recovery, the party from whom the second recovery was sought could raise as an equitable defense to turnover that the bank account constituted effectively a single asset, and the trustee should not be able to recover the same asset twice.

This Court reaffirms the holding of *In re Majors* by recognizing that current possession of estate property is not a required element for turnover pursuant to § 542(a).

The fact that § 542(a) specifically allows a trustee to recover either the property itself, or the value of such property, clearly establishes that a party need not be in actual possession of the property at the time of the turnover demand to fall within the scope of § 542(a).

**C. The Trustee is entitled to collect from Debtors the funds that were in the checking account on the date of filing.**

The Trustee has satisfied all of the elements required under § 542(a) to establish a claim against Debtors for turnover of the funds that remained in the Zions account on the date they filed their bankruptcy petition. The Court will, however, briefly address some of the policy concerns that have been raised in this and similar cases where a debtor had written pre-petition checks that cleared the debtor's checking account post-petition, and where the trustee sought to collect those funds directly from the debtor, rather than by using other remedies provided in the Code.

The Court recognizes that the result of this decision places Debtors in a difficult position. The funds that were in their checking account on the date they filed their case are admittedly no longer available to them, as Zions Bank honored those checks, and debited those amounts from their account, within four days after they filed the case. This will therefore require Debtors to pay the funds twice—once to the creditors [23] to whom the checks were

---

**23.** The Court notes that one of the checks was written to a charity, and not a creditor. In that case, obviously, Debtors would have no obligation to replace the funds. One must also remember, however, that if the Trustee brought an action to avoid the post-petition transfer under § 549, and recovered that transfer for the estate under § 550, the holder of the note secured by the mortgage, for ex-

ample, would be entitled to a claim under § 502(h) for the amount it was required to return to the Trustee. That claim would retain its secured status, leaving Debtors in the same position with regard to the amount of money they owed the note holder on the secured claim. *See In re Laizure*, 548 F.3d 693, 697–98 (9th Cir.2008) (holding that a claim determined and allowed under § 502(h) re-

originally payable, and a second time to the Trustee. Although this result does little to advance the Bankruptcy Code's policy of providing Debtors a fresh start through bankruptcy, it does promote an equally valid policy of providing for a fair and equitable distribution of Debtors' assets to their creditors.[24]

The Court also notes that Debtors could have prevented this result. Debtors could have merely waited until all outstanding checks had cleared the bank before filing their petition. However, if immediate filing was required, because of a financial emergency such as a pending foreclosure, Debtors could have stopped payment on the outstanding checks, or simply closed the bank account. In addition, Debtors could have provided notice directly to the bank that they had filed a bankruptcy petition, which would have created a duty on the part of the institution to not honor the checks.

The Court understands Debtor's argument that the latter of the three options could theoretically have subjected them to criminal charges,[25] assuming a prosecutor was able to show that Debtors issued the checks knowing that they would not be honored by the bank. However, this result would be no different for Debtors if they personally stopped payment on the checks or if they expected and relied on the Trustee to stop payment on the checks as part of his duties under Fed. R. Bankr.P. 2015(a)(4). If Debtors wrote those checks knowing that they would be filing for bankruptcy protection before the checks cleared the bank and that the checks would not be honored (either because Debtors closed the account or the Trustee placed a freeze on the account), the potential criminal liability would appear to attach regardless of who prevented the checks from clearing.[26]

---

tains the same characteristics it held prior to the filing of the bankruptcy petition), and *In re Bankvest Capital Corp.*, 375 F.3d 51, 62 (1st Cir.2004) (holding that a secured creditor's claim that is avoided as a post-petition transfer is entitled to that same secured claim following turnover to the trustee). *See also* David Gray Carlson, *Security Interests in the Crucible of Voidable Preference Law*, 1995 U. Ill. L.Rev. 211, 356 (1995) ("Payments received by a secured party are analytically different. Prior to bankruptcy, the 'payment' extinguished the antecedent debt. Once the payment is returned, it ought to be the case that the old debt, once dead, is now revived. This is universally assumed to be true, and § 502(h) more or less supports this conclusion[.]").

24. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 94, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (Blackmun, J., dissenting) (noting that "one of the central goals" of the bankruptcy process is "the fair distribution of assets among creditors."), *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 334 (7th Cir.2010) (noting the goal of a liquidation bankruptcy is "the fair distribution of the liquidated assets"), and

*In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001) (noting that "[t]he bankruptcy court's responsibility in administering the estate is not only to achieve a fair and equitable distribution of assets to the creditors, but also to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh.") (internal quotation marks omitted).

25. Utah Code Ann. § 76–6–505 (West 2011).

26. The Court notes that many, if not most, jurisdictions require the state to prove actual intent to defraud when prosecuting an individual for writing a bad check. As Chief Judge Kressel of the Eighth Circuit Bankruptcy Appellate Panel noted in his concurrence in *In re Pyatt*, however, "there is clearly no purpose to defraud if a bankruptcy debtor stops payment on a check in fulfillment of the debtor's duties under a federal statute." *In re Pyatt*, 348 B.R. at 788 n. 13. The distinction between proving that a check was written with intent to defraud, or that a check was written with knowledge that it would not be honored (as required in Utah), appears to be minimal.

The Court also acknowledges that the Trustee could have sought recovery of these funds from others. Specifically, the Trustee could have notified Zions Bank of the bankruptcy filing, consistent with his duty under Fed. R. Bankr.P. 2015(a)(4), so that the bank would be on notice to not honor the checks. However, this option will rarely be practical or effective, because this solution assumes a trustee receives accurate information within days or even hours of the commencement of the case that would enable the trustee to send such notice, and for the bank to receive the notice, before a check is honored.

This case provides a good example why this is not practical. This bankruptcy was filed on a Saturday. It would be a rare situation for a panel trustee to 1) be sitting in his or her office on a weekend, with staff, in the off-chance a bankruptcy would be filed; 2) that he would necessarily be the one appointed as the panel trustee on that new case; 3) that the schedules would show the existence of enough money in a checking account worth immediately acting on; **and** 4) that the schedules would provide sufficient information to allow the trustee to contact any listed banking institutions. In addition, since all four checks cleared within four days of the bankruptcy filing (and one the first business day after it was filed), even if the Trustee had mailed the letter the first business day the case was received, he could not have prevented that check from being honored.

These facts show that even if the Trustee had immediately complied with the requirements of Rule 2015(a)(4), it is not only possible, but likely, that most or all of the checks written pre-petition would have cleared the account by the time the bank received the notice. Accordingly, compliance with Rule 2015(a)(4) is not the solution to the issue presented under the facts of this case.

Secondly, if debtors are not properly counseled, they may inadvertently indicate in their schedules the balance they show in their check register, rather than the accurate amount actually still within their account. That is what appears to have happened here; Debtors listed the account with a $10.02 balance instead of the actual amount of $3,764.99. Since panel trustees stand to only receive $60 in a no-asset case, the system is not set up to require those same trustees to spend their personal assets to seize a $10 bank account.

In addition, the first time panel trustees typically receive a debtor's full social security number is usually a minimum of four to five days after the bankruptcy filing, when the § 341 notice is received from the Bankruptcy Noticing Center. Accordingly, especially in cases where the debtor has a common last name, notice to a bank without a full social security number could well be ineffective to provide actual notice of the bankruptcy. Had the Trustee in this case waited the typical amount of time to receive the full social security number before sending a notice to Zion Bank, all checks would have cleared.

Finally, the Trustee could admittedly seek to recover the funds directly from the payees of the checks by pursuing separate avoidance actions under § 549. As the Trustee argues, however, that approach would oftentimes be extremely uneconomical when there are numerous checks in relatively small amounts. Instead, the Trustee argues that the bankruptcy estate was better served by following the path he chose to follow—seeking reimbursement through a single entity without the need to file four separate adversary proceedings, with the estate paying a separate filing fee for each one. His approach is both allowed by the Code, and satisfies his "duty to collect the property of the estate 'as

expeditiously as is compatible with the best interests of the parties in interest.' " [27]

## VI. CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court should be, and hereby is, reversed. The Trustee has shown that he is entitled to an order compelling Debtors to turnover $3,524.99, the amount he sought in his turnover motion under § 542(a).

Accordingly, we REVERSE the bankruptcy court.

---

27. *In re Spencer,* 362 B.R. 489, 493 (2006) (quoting 11 U.S.C. § 704(a)(1)).