**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES NICHOLS; BEVERLY ANN
NICHOLS,
      *Plaintiffs-Appellants,*

v.

DAVID A. BIRDSELL,
      *Defendant-Appellee.*

No. 05-15554

D.C. No.
CV-04-00099-DGC

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted
February 16, 2007—San Francisco, California

Filed May 9, 2007

Before: J. Clifford Wallace, Richard D. Cudahy,* and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Wallace

---

*The Honorable Richard D. Cudahy, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

**COUNSEL**

Michael J. Fatta, Law Office of Michael J. Fatta, PLLC, Glendale, Arizona, for the plaintiffs-appellants.

Terry A. Dake, Terry A. Dake, LTC., Phoenix, Arizona, for the defendant-appellee.

---

**OPINION**

WALLACE, Senior Circuit Judge:

This case presents a new issue for our court: whether debtors' pre-bankruptcy application of their right to tax refunds to post-bankruptcy tax obligations constitutes an asset that must be turned over to the bankruptcy trustee pursuant to the Bankruptcy Code, 11 U.S.C. § 542. Plaintiffs-Appellants James W. Nichols and Beverly Nichols (Debtors) appeal from the district court's order denying their appeal from the bankruptcy court decision. In the underlying case, the bankruptcy court concluded that the pre-petition application of the right to the tax refund was an asset as of the petition date, and that the Debtors must therefore deliver to the trustee the value of the property under section 542(a). We agree, and affirm the district court's order denying the Debtors' appeal.

I.

David A. Birdsell, the trustee of the Debtors' bankruptcy estate (Trustee), filed an amended complaint in the United States Bankruptcy Court alleging a claim in the Debtors' interest in tax overpayments. The facts are not in dispute. The Debtors overpaid their 2001 federal and state income tax returns and were entitled to tax refunds as a result of the overpayments. Rather than obtain a current refund of that money, the debtors elected to leave those funds on deposit with the

United States and the State of Arizona, respectively, and apply the overpayments to their future tax liability. Sixteen days later, on February 5, 2002, the Debtors filed for bankruptcy. The Trustee demanded that the Debtors turn the deposits over to the Trustee, but this was not done. In February of 2003, the Debtors signed their 2002 federal and state income tax returns and applied the deposits (resulting from the overpayment of their 2001 taxes) to their 2002 tax liabilities.

The Trustee moved for partial summary judgment on the amended complaint, arguing that the Debtors' interest in the tax overpayments was property of the bankruptcy estate pursuant to 11 U.S.C. § 541 that must be turned over to the Trustee under section 542. The Debtors opposed the motion and also moved for summary judgment. The Debtors observed that, after making the election, they were no longer entitled to a tax refund. They contended that the election to apply the deposits to future tax liabilities extinguished their interest in the tax refund and left no property interest for the bankruptcy estate.

The bankruptcy court granted the Trustee's motion for summary judgment, concluding that the Debtors' prepayment of their tax liability constituted an asset of the estate as of the petition date, and that the Debtors must deliver to the Trustee the value of that asset under section 542(a). The Debtors appealed to the district court, and the district court denied the appeal.

On appeal to this court, the Debtors argue that their pre-bankruptcy application of their tax overpayment to the subsequent year's tax obligation was not property of their bankruptcy estate. They observe that Internal Revenue Code §§ 6402(b) and 6513(d) provide for a taxpayer to make an irrevocable election applying an overpayment of taxes to the subsequent year's tax obligation. They further contend that the election changed the character of the overpayment to a

payment of estimated taxes, leaving no interest for the bankruptcy estate.

We have jurisdiction under 28 U.S.C. § 1291, and review de novo the district court's decision on an appeal from a bankruptcy court. *See In re Bankr. Estate of MarkAir, Inc.*, 308 F.3d 1057, 1059 (9th Cir. 2002). The bankruptcy court's conclusions of law are reviewed de novo, and its factual findings for clear error. *Id.* We review de novo questions of statutory construction. *See id.*

## II.

Section 542 provides in part,

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). Section 541 defines property as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

In *In re Feiler*, 218 F.3d 948 (9th Cir. 2000), we addressed an analogous issue under the Bankruptcy Code. The Feilers had net operating losses (NOLs) in 1993. *Id.* at 950. Under the tax code at that time, they had two options: (1) carry back the NOLs and apply them to the past three taxable years, carrying forward any remainder; or (2) waive the carryback provision and carry forward the entire NOLs. *Id.* at 950-51. Under the first option, applying the NOLs to the past years would result in a current tax refund to the debtors. Carrying forward the

NOLs under the second option could result in a reduction of tax liability in future years, since the NOLs could be used to offset future income.

The Feilers chose the second option, to waive the carry-back. *Id.* at 951. Had they chosen the first option, they would have been entitled to a tax refund of over $280,000. *Id.* The following year, five months after making the election, the Feilers declared bankruptcy. *Id.* The bankruptcy trustee filed income requests for the tax refund that the Feilers would have received had they chosen the first option. *Id.* The Internal Revenue Service (IRS) disallowed the refund on the grounds that the Feilers had made an irrevocable election to carry forward the NOLs. *Id.* The trustee filed suit against the government, seeking to set aside the Feilers' previous election under section 548, a code section that involves fraudulent transfers. *Id.* The bankruptcy court granted summary judgment in favor of the bankruptcy trustee, and we affirmed. *Id.*

*Feiler* is different from this case in that it involved an election relating to NOLs, and not a prepayment of taxes. *Id.* at 950. In addition, the issue in *Feiler* was whether the debtors' irrevocable election should be set aside under section 548, not section 542. *Id.* at 951. Under section 548, the trustee may avoid certain fraudulent transfers of an "interest of the debtor in property" that were "made or incurred on or within 2 years before the date of the filing of the petition." 11 U.S.C. § 548(a)(1). In contrast, the issue in the instant case is whether the prepayment of taxes constitutes estate property under section 542 at the time of the bankruptcy filing. Thus, *Feiler* is not dispositive.

**[1]** Our reasoning in *Feiler* is nevertheless instructive. *Feiler* stated that the first issue was whether "the election to forgo a tax refund and waive the carryback on the NOLs involved an interest in property." 218 F.3d at 955 (quotation marks omitted). Interpreting the term "property" broadly, we held that "[b]ecause the right to receive a tax refund consti-

tutes an interest in property, . . . the election to waive the carryback and relinquish the right to a refund necessarily implicates a property interest." *Id.* We observed that "the Supreme Court has explained that the term property has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Id.* (internal quotation marks omitted) (citing *Segal v. Rochell*, 382 U.S. 375, 379 (1966)).

**[2]** The Debtors contend that their inability to get the funds back from the IRS and the irrevocable nature of their election prevents the bankruptcy estate from asserting any right to the funds. However, nothing in section 541 requires that the debtor's interest be immediately capable of being liquidated into cash in order to constitute property of the estate. *See* 11 U.S.C. § 541. Instead, section 541(c)(1) provides that a debtor's interests become property of the estate even in circumstances in which the interest cannot be liquidated and transferred by the debtor. 11 U.S.C. § 541(c)(1); *cf. In re O'Gorman-Sykes*, 245 B.R. 815, 819 (Bankr. E.D. Va. 1999) (holding that anticipated tax refunds are property of the bankruptcy estate under section 541(a)).

**[3]** As a result of the election, the Debtors were left with a credit with the IRS that provided a dollar-for-dollar tax reduction in the following year. If the Nichols had not elected to prepay their taxes, those funds would have been refunded to them and would likely have been available for the bankruptcy estate when they voluntarily filed for bankruptcy just 16 days later. The fact that the election, once made, was irrevocable, does not change the analysis. In light of the expansive definition of property contained in the Bankruptcy Code and our broad interpretation of "property" under *Feiler*, we hold that this credit toward future taxes constituted estate property at the time the Debtors filed for bankruptcy. *Cf. In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984) ("By including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be

contingent and not subject to possession until some future time").

**AFFIRMED.**