# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.  NV-12-1439-JuKiD |
| ) | |
| EUGENE SCOTT NEWMAN, JR., ) | Bk. No.  11-28663-LBR |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| EUGENE SCOTT NEWMAN, JR., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| LENARD SCHWARTZER, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on January 25, 2013
at Las Vegas, Nevada

Filed - February 4, 2013

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Linda B. Riegle, Bankruptcy Judge, Presiding

_____

Appearances:     Malik W. Ahmad, Esq., Law Office of Malik W.
Ahmad, appeared for appellant Eugene Scott
Newman, Jr.; Lenard E. Schwartzer, chapter 7
trustee appeared pro se

_____

Before:  JURY, KIRSCHER, and DUNN Bankruptcy Judges.

JURY, Bankruptcy Judge:

Chapter 7[1] debtor Eugene Scott Newman, Jr., appeals the bankruptcy court's order granting the motion to compel turnover of debtor's 2011 tax refund in the amount of $4,727 brought by chapter 7 trustee Lenard Schwartzer. We AFFIRM.

## I. FACTS

Debtor and his spouse are married and residents of Nevada. On December 2, 2011, debtor filed his individual chapter 7 petition. Debtor's schedules did not list his 2011 tax refund as an asset nor did he claim any portion of the refund exempt.

In January 2012, debtor made three amendments to his Schedules B and C which related to vehicles.

On March 12, 2012, debtor received his discharge.[2]

On May 1, 2012, the trustee sent debtor a letter requesting a copy of his 2011 tax return. Debtor complied. The jointly filed tax return showed a refund of $5,135 due.

On May 11, 2012, the trustee sent debtor a second letter stating that a portion of the refund, in the sum of $4,727, constituted property of the estate under § 541 and thus was subject to turnover under § 542(a). The letter further stated

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We take judicial notice of the docket of the underlying bankruptcy case and the imaged documents attached thereto. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

that debtor could claim an exemption for the earned income credit if debtor filed an amended Schedule C.

On May 22, 2012, debtor's counsel sent an email to the Help Desk at the bankruptcy court stating:

> I have the following cases to reopen for changes in the schedules[3]. . . . Do I need to pay the reopening case fee of $269 in each case. These folks have been discharged. The procedural question is if the fee is payable after discharge or after the closure of the case. As usual thanks for your help.

On May 23, 2012, the Help Desk responded: "Yes, the reopening fee needs to be paid in each case with that motion. Thank you."

On May 30, 2012, debtor's counsel filed an ex parte motion to reopen debtor's case even though debtor's case was not closed.

On July 9, 2012, the trustee moved for an order compelling turnover of the 2011 tax refund in the amount of $4,727 and for sanctions of $250 (Turnover Motion).

On July 16, 2012, debtor's counsel filed an opposition to the Turnover Motion arguing: (1) the tax refund of the non-debtor spouse was not property of the estate subject to turnover; (2) the non-debtor spouse need not turn over her portion of the refund due to the application of the Withholding Rule, the Proportionate Income Rule, or the 50/50 Refund Rule;[4]

---

[3] Counsel listed debtor's case as well as Case No. 09-32838.

[4] These rules reflect three approaches that various bankruptcy courts have taken in allocating tax refunds between the debtor and non-debtor spouse. See In re Spina, 416 B.R. 92, (continued...)

-3-

(3) allocation of a joint tax refund is predicated upon consideration of many factors; and (4) the trustee's motion to compel was "too late" because debtor and his spouse spent the money to pay utility bills, their mortgage and other expenditures.

On August 9, 2012, the bankruptcy court heard the matter and granted the trustee's Turnover Motion by order entered August 19, 2012.[5]

On August 22, 2012, debtor amended his Schedule C to claim the sum of $3,094 exempt under Nev. Rev. Stat. 21.090[6], the

---

[4](...continued)
96-97 (Bankr. E.D.N.Y. 2009). The Withholding Rule "allocates the joint tax refund between the spouses in proportion to their respective tax withholding." Id. at 96. Under this rule, a nondebtor spouse may have been employed but not have generated any withheld taxes, and, therefore, would have no right to any withheld taxes which are repaid to the taxpayer. Id. The Proportionate Income Rule allocates the tax refund as a direct percentage of the earnings of the spouses. Id. The 50/50 Refund Rule, a minority view which applies New York matrimonial law, creates a rebuttable presumption that each spouse contributed equally to the household, including nonmonetary contributions, and, therefore, the refund should be divided equally between the spouses. Id. at 96-97. See also In re Palmer, 449 B.R. 621 (Bankr. D. Mont. 2011) (adopting formula used by Internal Revenue Service to allocate tax refund).

[5] Debtor has provided no transcripts in the record on appeal.

[6] This section provides:

1. The following property is exempt from execution, except as otherwise specifically provided in this section or required by federal law:
. . .
(aa) Any tax refund received by the judgment debtor that is derived from the earned income credit
(continued...)

-4-

earned income exemption statute, and to claim an additional $1000 exempt under Nev. Rev. Stat. 21.090(1)(z), the wildcard exemption. Debtor's amended Schedule C does not identify the property to which the exemption applies, but we presume it is the tax refund at issue in this appeal.

On August 22, 2012, the same date the amended Schedule C was filed, debtor filed a timely notice of appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B) and (E). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in entering the turnover order.

## IV. STANDARD OF REVIEW

Whether property is included in a bankruptcy estate and procedures for recovering estate property are questions of law that we review de novo. White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008).

## V. DISCUSSION

**A. Debtor Did Not Exempt Any Portion of the Tax Refund Before the Bankruptcy Court Ruled**

Debtor first contends that the bankruptcy court erred as a matter of law in holding that debtor's earned income credit of

---

[6](...continued)
described in section 32 of the Internal Revenue Code, 26 U.S.C. § 32, or a similar credit provided pursuant to a state law.

-5-

$3,094 is not exempted under Nev. Rev. Stat. 21.090. This contention is erroneous.

Debtor's earned income credit exemption was not listed in his original Schedule B or C, nor did debtor amend his Schedules to claim the exemption in the tax refund prior to the bankruptcy court's ruling on the trustee's Turnover Motion.[7] It was only after the bankruptcy court entered an order in favor of the trustee on the Turnover Motion that debtor filed his amended Schedule C and, even then, his amended Schedule does not identify the property to which the exemption applies.[8] Because debtor's amended Schedule C was not before the bankruptcy court with respect to the order on appeal, we do not consider it now. Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001) ("Evidence that was not before the [trial] court will

---

[7] We are aware that the purported reason for the delay in amending Schedule C was debtor's attorney's mistaken belief that before amending the Schedule, it was first necessary to obtain a court order reopening debtor's case even though the case had not yet been closed. As a result of his mistaken belief, debtor's attorney claims that the amended Schedule C should be considered on the basis of excusable neglect. However, once the bankruptcy court entered the order granting the trustee's Turnover Motion, debtor's remedy was to file a motion under Civil Rule 59, as incorporated by Rule 9023, or file a motion under Civil Rule 60(b), as incorporated by Rule 9024. Debtor did neither and from what we can tell, debtor's attorney now raises the issue of his excusable neglect for the first time in this appeal. We address this argument in further detail below.

[8] Under Rule 1009(a), a debtor may amend his schedules as a matter of course at any time prior to the closing of the case. Generally, "[t]he bankruptcy court has no discretion to disallow amended exemptions, unless the amendment has been made in bad faith or prejudices third parties." Arnold v. Gill (In re Arnold), 252 B.R. 778, 784 (9th Cir. BAP 2000) (citing Martinson v. Michael (In re Michael), 163 F.3d 526, 529 (9th Cir. 1998)).

-6-

not generally be considered on appeal.") (citing Karmun v. Comm'r, 749 F.2d 567, 570 (9th Cir. 1984)); see also Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1078 (9th Cir. 1988) ("Papers not filed with the [trial] court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal."). As it now stands, the order on appeal necessarily subsumes a determination that the tax refund at issue is nonexempt property of the estate.

**B.    The Tax Refund Was Property of Debtor's Estate**

Debtor next challenges the bankruptcy court's conclusion that the entire tax refund was property of his estate. Section 541(a)(1) provides that property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. Under § 541(a)(2), the estate also includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is . . . under the sole, equal or joint management and control of the debtor." (Emphasis added).

"[T]he right to receive a tax refund constitutes an interest in property." Nichols v. Birdsell, 491 F.3d 987, 990 (9th Cir. 2007). The nature and extent of the debtor's interest in the tax refund is determined by nonbankruptcy law. Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 451 (2007) (citing Butner v. United States, 440 U.S. 48, 54-55 (1979)). Nevada law applies here.

Under Nevada law, all property acquired by either spouse during the marriage, with some exceptions not applicable here, is community property. Nev. Rev. Stat. 123.220; see Norwest

-7-

_Fin. v. Lawver_, 849 P.2d 324, 326 (Nev. 1993) (wages of either spouse during marriage are considered to be community funds regardless of which spouse earns the greater income or which spouse supports the community). Spouses also have joint control of community property. Either spouse may transfer or encumber community property without the consent of the other subject to several exceptions, which are not relevant here. Nev. Rev. Stat. 123.230; _Soper v. Crystal Palace Gambling Hall, Inc. (In re Crystal Palace Gambling Hall, Inc.)_, 36 B.R. 947, 950 (9th Cir. BAP 1984). Therefore, because the tax refund is community property subject to the joint control of either spouse, § 541(a)(2) "dictates that the entire prorated tax refund is property of [d]ebtor's bankruptcy estate." _In re Martell_, 349 B.R. 233, 236 (Bankr. D. Idaho 2005).[9] We thus conclude that the bankruptcy court properly found the tax refund was property of debtor's estate subject to turnover.

**C.      The Bankruptcy Court Properly Ordered Turnover**

Having concluded that the tax refund was property of debtor's estate, we next consider whether the trustee may compel turnover of the property from debtor when he has spent the funds. Section 542(a) provides:

> Except as provided in subsection (c) or (d) of this

---

[9] Debtor advocates that instead of applying Nevada's community property law to this case, we should apply what is known as the 50/50 Refund Rule. Debtor provides no cogent reason — other than a favorable outcome for himself and non-debtor spouse — as to why this Panel should adopt a minority view followed by a handful of bankruptcy courts in New York that apply New York matrimonial law. Simply put, New York is not a community property state.

-8-

> section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Relying on Brown v. Pyatt (In re Pyatt), 486 F.3d 423 (8th Cir. 2007), debtor contends that by spending the funds, they are no longer in his "possession, custody or control" within the meaning of § 542(a). In Pyatt, although the debtor had approximately $1,900 in his bank account at the time his petition was filed, the Eighth Circuit found that he could not be compelled to turn over that amount when most of the funds were used to honor prepetition checks that cleared soon after his bankruptcy filing because the funds were no longer in his possession or control. In reaching this conclusion, the court first reasoned that the language of § 542(a) said nothing about whether the obligation to deliver the property to the trustee continued after custody or control ceased. Id. at 428. Next, citing Maggio v. Zeitz, 333 U.S. 56 (1948), the court observed that pre-Code practice suggested that § 542(a) permitted a trustee to compel turnover only from entities which have control of property of the estate or its proceeds at the time of the turnover demand. Id. at 428-29. The court also rejected the argument that present possession was not required in light of the statutory language that authorized the trustee to demand turnover of the property, "or its value." According to the Eighth Circuit, this language meant that if a debtor transferred property of the estate and received value for it, "a trustee may

-9-

compel him to turn over the value of the property because he still has control over the proceeds of the property." Id. at 429.

Finally, the court expressed concern that if present "possession, custody or control" was not required, the "trustee could proceed both against the debtor and against the payees and obtain double satisfaction." Id. at 427. The court noted that § 550(d) prohibited double satisfaction in avoidances under §§ 544, 545, 547-549, 553(b), and 724(a) but made no mention of § 542(a). The court reasoned: "The absence of such a prohibition suggests that the drafters did not intend to authorize a trustee to proceed under § 542(a) against everyone who may have had control over property of the estate at some point after the petition was filed." Id. at 427-28.

The Pyatt ruling does not persuade us. Among the Circuit courts and Bankruptcy Appellate Panels that have addressed the issue before us, Pyatt represents a minority view.[10] The Fourth and Seventh Circuits and the Sixth and Tenth Circuit bankruptcy appellate panels do not require the debtor/defendant to have present possession, custody or control of property when a demand for turnover is made. See Beaman v. Vandeventer Black, LLP (In re Shearin), 224 F.3d 353 (4th Cir. 2000) (law firm, having possessed year-end profits belonging to the debtor during the pendency of his bankruptcy case, must turn over profits, or their equivalent value, to the trustee, notwithstanding that the

---

[10] We note that the Nevada District Court has followed Pyatt in Shapiro v. Henson (In re Henson), 449 B.R. 109 (D. Nev. 2011).

-10-

law firm no longer possessed the funds at the time the turnover proceeding was filed); Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.), 100 F.3d 53, 56 (7th Cir. 1996) ("[B]y the time the trustee got around to demanding the money from the law firm, the law firm no longer had it, so how could it deliver it to the trustee? [Section 542], however, requires the delivery of the property or the value of the property. Otherwise, upon receiving a demand from the trustee, the possessor of property of the debtor could thwart the demand simply by transferring the property to someone else. That is not what the statute says, . . . and can't be what it means.") (emphasis in original); Bailey v. Suhar (In re Bailey), 380 B.R. 486, 491-93 (6th Cir. BAP 2008) (portion of tax refund which was property of the debtor's estate retained by attorney for unpaid attorney's fees and no longer in the debtor's possession was subject to turnover); and Jubber v. Ruiz (In re Ruiz), 455 B.R. 745 (10th Cir. BAP 2011) (requiring turnover of the balance of funds in the debtors' checking account when petition was filed, prior to payment of checks that debtors had written prepetition).

Recently, in the unpublished decision of Rynda v. Thompson (In re Rynda), 2012 WL 603657 (9th Cir. BAP Jan. 30 2012), another Panel of this court held that § 542(a) does not require current possession under circumstances similar to those here. In Rynda, the debtor filed a chapter 7 petition and did not list her entitlement to tax refunds under state and federal law in her Schedule B or claim such refunds exempt in her Schedule C. After learning about the refunds, the trustee made a demand on

-11-

the debtor to turn over the refunds. In response, the debtor asserted, among other things, that the funds were no longer in her possession — although she offered to make monthly payments to pay the amount of the refunds. The trustee refused her proposal and filed a motion for turnover of the refunds under § 542. After a hearing, the bankruptcy court issued a decision determining that a turnover order was appropriate if a debtor came into possession of estate property after filing a petition, even if the debtor no longer had possession of the property. Id., at *1. The debtor appealed.

On appeal, the Panel held that even though debtor no longer possessed the funds, she was not relieved of her statutory obligation "'to deliver to the trustee and account for such property' or its value." Id., at *2. "Section 542's mandate means that she must deliver property or pay over money to the trustee. The requirement is not waived because the debtor no longer possesses the property." Id. (citation omitted). In the end, the Panel held that "since the Debtor had been in possession of property of the estate, the Turnover Order was appropriate even though the Debtor did not possess the funds at the time the Trustee filed the Turnover Motion." Id., at *3.

Because we do not find Rynda distinguishable from this case, we adopt its holding, but expand on its analysis in light of debtor's reliance on Pyatt. We begin our analysis with the language of § 542(a) itself. United States v. Buckland, 289 F.3d 558, 564 (9th Cir. 2002) (en banc). Under the plain language of the statute "[t]he obligation to turnover extends not just to property presently in someone's possession, custody

-12-

or control but to property in its 'possession, custody or control _during the case_.'" Boyer v. Davis (In re USA Diversified Prods., Inc.), 193 B.R. 868, 874-75 (Bankr. N.D. Ind. 1995) (emphasis in original). Here, there is no question that debtor was entitled to the tax refund on the petition date and that he received the refund post-petition. Thus, debtor was in "possession, custody, or control" of the property "during the case" as required under the statute.

Moreover, the plain language of the statute provides a broader remedy than turnover of property itself. Section 542(a) provides that "an entity . . . in possession, custody, or control, during the case, . . . shall deliver . . . and account for, such property _or the value_ of such property." (Emphasis added). "[I]f the statute [were] read to require current possession of the property, the language allowing a trustee to alternatively recover 'the value of the property' would become superfluous, as the trustee could only recover the property itself." In re Ruiz, 455 B.R. at 751. The statute should not be interpreted so as to render one part inoperative. Id.

In addition, the pre-Code practice of requiring possession must be viewed in context. In Maggio, 333 U.S. 56, the trustee brought a motion to hold Maggio in contempt for failing to turn over property of the estate. "Numerous courts, including Maggio, were troubled by the possibility that a turnover order might be issued against a party who could not possibly comply with it, because the property in question was no longer in its possession, and then attempt to force that party to do the impossible through contempt proceedings." In re USA Diversified

-13-

*Prods., Inc.*, 193 B.R. at 876. Even then, if the party did not have present possession, it only meant that the trustee could not seek to enforce turnover through contempt, but instead was required to initiate a plenary proceeding in an effort to obtain a money judgment for what the turnover respondent no longer possessed. *Id.* at 877. Considered in this context, the United States Supreme Court in *Maggio* "held that turnover was appropriate only 'when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof, by the defendant at the time of the [turnover] proceeding.'" *In re Bailey*, 380 B.R. at 491 (quoting *Maggio*, 333 U.S. at 63-64). Whatever the procedures then, the plain language of § 542(a) has no "present possession" requirement.

We also conclude that the *Pyatt* court's concern with a trustee's double recovery is unfounded. Section 550(d)'s prohibition on double recovery references statutes that relate to the trustee's avoidance powers (§§ 544, 545, 547-549, 553(b) and 724(a)). Because § 542(a) addresses not avoidance, but turnover of property of the estate, "little, if anything, should be read into the failure to include § 542(a) in the provisions of § 550." *In re Ruiz*, 455 B.R. at 751-52. Moreover, "if a trustee sought a double recovery, the party from whom the second recovery was sought could raise as an equitable defense to turnover that the bank account constituted effectively a single asset, and the trustee should not be able to recover the same asset twice." *Id.* at 752.

The upshot of this analysis is clear: even though debtor no longer possessed the funds, he was not relieved of his

-14-

statutory obligation "'to deliver to the trustee and account for such property' or its value." Rynda, 2012 WL 603657, at *2. Our conclusion is consistent with the Ninth Circuit's holding in Nichols, 491 F.3d 987. In that case, the issue was whether the debtors' overpayment of taxes, which entitled them to an immediate refund, was property of their estate subject to turnover. The debtors elected to leave the overpayments on deposit with the United States and the State of Arizona and to apply the overpayments to their future tax liability. Upon discovery, the trustee required debtors to turn over the unpaid balance on their taxes to the estate. The Ninth Circuit held that the right to receive a tax refund constituted an interest in property and, therefore, it followed that the debtors' election to waive the carryback and relinquish the right to a refund necessarily implicated a property interest. The court determined that the debtors had exchanged a right to present property for the right to it later and thus the value of the tax credit was subject to the trustee's avoidance powers. Thus, even though the funds were not presently in the debtors' possession, the trustee had authority to compel turnover of the value of the tax credit from the debtors. Compare United States v. Gould (In re Gould), 401 B.R. 415 (9th Cir. BAP 2009) (fact that the debtor had spent tax refund which he was not entitled to did not make Internal Revenue Service's appeal moot because debtor could be ordered to pay back the money), aff'd, 603 F.3d 1110 (9th Cir. 2010).

In sum, we hold that § 542(a) does not require the debtor to have current possession of the property which is subject to

turnover. "If a debtor demonstrates that [he] is not in possession of the property of the estate or its value at the time of the turnover action, the trustee is entitled to recovery of a money judgment for the value of the property of the estate." Rynda, 2012 WL 603657, at *3. In addition, the refund here, approximately $5,000, cannot be viewed as having an insignificant value to the estate.[11] Accordingly, the bankruptcy court properly granted the trustee's Turnover Motion.

## D.   Civil Rule 60(b) and Excusable Neglect

Debtor's attorney argues on appeal that his failure to file amended Schedule C prior to the hearing on the Turnover Motion constitutes excusable neglect. Civil Rule 60(b)(1) grants bankruptcy courts discretion to relieve a party from a judgment or order for reason of "mistake, inadvertence, surprise, or excusable neglect," provided that the party moves for such relief not more than a year after the judgment was entered.

A Civil Rule 60(b) motion must be made in the bankruptcy court. After entry of the order granting the trustee's Turnover Motion, debtor made no such motion for the bankruptcy court to consider. At the hearing on this matter, the Panel urged debtor's counsel to proceed with the filing of a Civil Rule 60(b) motion because we generally do not decide issues on appeal that were not first presented to the bankruptcy court. In re E.R. Fegert, Inc., 887 F.2d at 957. Debtor must seek this

---

[11] Although debtor contends the amount recovered by the trustee would be inconsequential because he is entitled to claimed exemptions, as previously explained, the issue of whether he is entitled to any exemption is not properly before us in this appeal.

-16-

relief in the bankruptcy court.

## VI.  CONCLUSION

For the reasons stated, we AFFIRM.