NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-13-1368-TaKuPa |
| | ) | |
| MATTHEW F. GALLAGHER and MELISSA A. GALLAGHER, | ) | Bk. No. 12-10213-NB |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| MATTHEW F. GALLAGHER; MELISSA A. GALLAGHER, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| KATHY A. DOCKERY, Chapter 13 Trustee; BOROWITZ & CLARK LLP, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on February 20, 2014
at Pasadena, California

Filed - March 17, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Neil W. Bason, Bankruptcy Judge, Presiding

_____

Appearances:     Appellant Melissa A. Gallagher argued pro se;
Akihito Koyama on brief for Appellee, Kathy A.
Dockery, Chapter 13 Trustee; Michael Erik Clark,
Nancy Bonaccorso Clark and Shannon A. Doyle of
Borowitz & Clark, LLP, on brief for Appellee,
Borowitz & Clark, LLP.

_____

Before: TAYLOR, PAPPAS, and KURTZ, Bankruptcy Judges.

_____

[*]     This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Debtors Matthew and Melissa Gallagher retained appellee Borowitz & Clark, LLP (the "Firm") as bankruptcy counsel in a chapter 13[1] case. The Firm represented Debtors until the bankruptcy court sustained objections to Debtors' amended chapter 13 plan and then substituted out of the case. It obtained a fee award, but only after the bankruptcy court converted the case to a chapter 7 proceeding. The bankruptcy court later reconverted the case to chapter 13. This appeal stems from a post-reconversion order[2] (the "Turnover Order") requiring that Debtors return to Chapter 13 Trustee Kathy Dockery the plan payments that she refunded to them after the initial conversion. The Chapter 13 Trustee sought return pursuant to § 105(a) and for the specific and sole purpose of paying the Firm's fees. The bankruptcy court granted the Chapter 13 Trustee's request – not under § 105(a) but under § 542 – and, in addition to ordering turnover, provided the Firm with immediate collection rights.

We determine that the bankruptcy court erred, as a matter of law, and, therefore, we REVERSE.

**FACTS**

The relevant facts are not in dispute. Debtors filed their

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Debtors' notice of appeal states that they appeal from the Memorandum Decision Holding Debtors Jointly and Severally Liable Under 11 U.S.C. [§] 542, which the bankruptcy court entered on July 22, 2012, the same day that it issued the Turnover Order.

- 2 -

petition pro se, but subsequently retained the Firm which filed an amended chapter 13 plan and responded extensively to plan objections filed by Debtors' mortgage lender, U.S. Bank. The Debtors challenged the mortgage debt on their residence on multiple grounds.[3] The bankruptcy court ultimately sustained U.S. Bank's objections in a memorandum decision entered on July 12, 2012. It then held two hearings on July 17, 2012. Debtors did not appear at either hearing, but the Firm appeared at both.

At the first hearing, the Firm advised the bankruptcy court that the Firm no longer represented the Debtors. It then disclosed that the Debtors did not make their July plan payment. In response, the bankruptcy court converted the case to a chapter 7 case.

At the second hearing, held in connection with U.S. Bank's relief from stay motion, the Firm appeared on behalf of Debtors. U.S. Bank advised the bankruptcy court that it would accept its tentative ruling, which provided for a four-week continuance to allow U.S. Bank to supplement the record, but asked that Debtors resume regular payments in the interim. The Firm then disclosed that the Debtors could not do so. In response, the bankruptcy court granted stay relief.

The following day, the Firm filed an application for approval of supplemental attorney's fees. No one objected to

---

[3] We take judicial notice of the documents on the bankruptcy court's electronic docket in the bankruptcy case. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989) (reviewing court may take judicial notice of underlying bankruptcy documents).

this request, and the bankruptcy court later entered an order (the "Fee Order") awarding fees in the amount of $17,415.21. Two weeks before entry of the Fee Order, however, the bankruptcy court entered the order converting the case (the "Conversion Order"). The bankruptcy court, therefore, modified the Fee Order by striking "13" and inserting "7," to provide that the "Chapter 7 Trustee is directed to pay" the allowed fees from the estate, funds permitting and subject to § 726(b).[4] Fee Order (dkt. #67).

Shortly thereafter, the Chapter 13 Trustee filed and served her Notice of Intent to File Trustee's Final Report and Account ("Notice of Intent"). The Notice of Intent provided an objection period of thirty days after the service date of August 23, 2012. The first page of the attachment to the Notice of Intent disclosed that the Firm did not hold an allowed claim. The second page identified $8,297.00 as "Debtor Refunds." The Chapter 13 Trustee also mailed a check for $8,297.00 (the "Refund") to the Debtors on August 23, 2012; the Debtors promptly cashed it.

Seven days later, and before termination of the 30-day notice period, the Chapter 13 Trustee filed a declaration (purportedly executed the next day, August 31, 2012) and stated under penalty of perjury that she had received no objection to the Notice of Intent within the period permitted by Rule 5009. She filed her Final Report and Account on August 31, 2012; an

---

[4] Section 726(b) provides that allowed § 503(b) administrative claims incurred postconversion take priority over allowed § 503(b) administrative claims incurred preconversion.

order entered September 12, 2012 that discharged her as Trustee in the chapter 13 case and exonerated her bond.

The Chapter 13 Trustee eventually realized that the Firm obtained a Supplemental Fee Award postconversion, but did not get paid. She sent a written demand to the Debtors requesting prompt return of the Refund; the Debtors did not respond. She then entered into a stipulation with the chapter 7 trustee[5] ("Stipulation") agreeing to reconvert the chapter 7 case to chapter 13 for the purpose of filing a motion seeking to require turnover of the Refund and payment of the Firm. The bankruptcy court[6] entered an order approving the Stipulation and reconverting the case to chapter 13 ("Reconversion Order"), and thereafter the Chapter 13 Trustee filed her motion to compel turnover ("Turnover Motion").

The Chapter 13 Trustee based the Turnover Motion on the bankruptcy court's broad discretion under § 105(a). She argued that fairness and equity demanded that the Debtors return the Refund because they received it "purely due to an administrative error" and as a result of "excusable neglect or mistake." Turnover Motion at 6 (dkt. #89).

The Debtors opposed the Motion to Compel Turnover on multiple grounds. Of most relevance here, they argued that use of § 105 to require return of the Refund and to require payment

---

[5] The Chapter 13 Trustee's counsel executed the Stipulation on behalf of the Chapter 13 Trustee on September 11, 2012, and filed it on September 12, 2012, the day the Chapter 13 Trustee was discharged.

[6] Judge Barry Russell, the judge assigned the chapter 7 case, signed the Reconversion Order.

of the Firm from the Refund created a conflict with other provisions of the Bankruptcy Code.[7] They pointed out that, pursuant to § 1326(a)(2), the Chapter 13 Trustee lacked authority following conversion to pay creditors any undistributed funds and that payment to the Debtors of the Refund did not create a windfall to the Debtors because § 541(a)(6) excluded the Debtors' postpetition earnings from inclusion in the chapter 7 estate. The Debtors also cited <u>Warfield v. Salazar (In re Salazar)</u>, 465 B.R. 875 (9th Cir. BAP 2012), for its discussion and application of the plain language of § 348(f)(1)(A) to exclude from property of a converted chapter 7 estate, tax refunds that the debtors spent during their chapter 13 case for normal living expenses.

Over the Debtors' opposition, and after hearing,[8] the bankruptcy court granted the Chapter 13 Trustee's request. It entered a memorandum decision and the Turnover Order on July 22, 2013. The bankruptcy court, however, did not grant the Turnover Motion pursuant to § 105(a). Rather, it based the Turnover Order on § 542.[9] The Turnover Order also recites that it is enforceable by any appropriate representative of the bankruptcy

---

[7] Debtors direct this argument, in part, to the reconversion of the case to chapter 13, which they argue violates their rights under the 13th Amendment of the Constitution. As discussed below, we lack jurisdiction to review the Reconversion Order, and we therefore do not consider this argument.

[8] At the hearing, the Debtors advised the bankruptcy court that they had not been unwilling to return the Refund to the Chapter 13 Trustee, they just did not have it anymore.

[9] The bankruptcy court, however, misstated in the Memorandum Decision that the Chapter 13 Trustee brought the Turnover Motion pursuant to § 542.

- 6 -

estate; if not paid in full within 60 days, allowed entry of a payroll deduction order; and, was explicitly without prejudice to the rights of the Firm, subject to the automatic stay, to collect their allowed fees from Debtors, "together with any appropriate interest, costs of collection, and other charges." Turnover Order at 2 (dkt. #106).

The Debtors timely filed a notice of appeal from the Turnover Order.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (E).

We have jurisdiction under 28 U.S.C. § 158(a) and (b) to hear appeals from final judgments, orders, and decrees; and with leave of the Panel, from interlocutory orders and decrees of bankruptcy judges. Rule 8002 provides that a notice of appeal must be filed with the clerk within 14 days of entry of the judgment, order, or decree.

Debtors include in their statement of issues on appeal several issues relating to the Conversion Order, the Fee Order, and the Reconversion Order. The bankruptcy court entered the Conversion Order on July 26, 2012, the Fee Order on August 9, 2012, and the Reconversion Order on September 20, 2012. Debtors filed their notice of appeal from the Turnover Order on July 31, 2013, long after the 14-day filing period provided under Rule 8002 expired as to all but the Turnover Order.

The burden of demonstrating jurisdiction lies with the party asserting it. <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 379-80 (1994). Here, Appellants merely state that

- 7 -

we have appellate jurisdiction pursuant to 28 U.S.C. § 158. They offer no authority to establish our jurisdiction to hear challenges to the final and non-appealable Conversion Order, Fee Order, or Reconversion Order. We, therefore, conclude that we have jurisdiction under 28 U.S.C. § 158 solely with respect to the Turnover Order.

**ISSUE**

Whether the bankruptcy court erred in entering the Turnover Order.

**STANDARD OF REVIEW**

We review the bankruptcy court's interpretation of the Bankruptcy Code de novo. <u>Shapiro v. Henson</u>, 739 F.3d 1198, 2014 U.S. App. LEXIS 440, *4 (9th Cir. 2014). De novo review means that our review is independent; we give no deference to the bankruptcy court's conclusion. See <u>First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)</u>, 439 F.3d 558, 561 (9th Cir. 2006).

**DISCUSSION**

**A.  Section 542 does not support the Turnover Order.**

The bankruptcy court's analysis under § 542 was relatively brief. The bankruptcy court recited that § 542 requires that: "Persons who receive 'possession, custody, or control' of property of the bankruptcy estate must deliver such property to the trustee and account for such property '<u>or</u> the value of such property.'" Memorandum Decision at 3 (dkt. #105)(emphasis in original). From there, the bankruptcy court quoted Ninth Circuit authority:

"If a debtor demonstrates that she is not in possession

- 8 -

of the property of the estate or its value at the time of the turnover action, the trustee is entitled to recovery of a money judgment for the value of the property of the estate." In re Rynda, 2012 WL 603657 at *2 (9th Cir. BAP) (sic) (unpublished); and In re Newman, 487 B.R. 193, 198-202 (9th Cir. BAP 2013) (following Rynda).

Id. The bankruptcy court then concluded that "Debtors are liable for the dollar amount of the [Refund]."[10] Id. The bankruptcy court found the Debtors' Salazar argument inapplicable.[11] Instead, the bankruptcy court reasoned that the Debtors accidentally received property of the estate[12] that should have been paid to the Firm and that, despite having spent the Refund, they remained contractually and legally obligated to return the Refund or its value. We determine that the bankruptcy court erred, as a matter of law, in its application of § 542.

As the Debtors correctly argue on appeal, their chapter 13 plan payments were not property of the chapter 7 estate, and the Chapter 13 Trustee properly paid the Refund to the Debtors as required by §§ 348(f)(1)(A) and 1326(a)(2). And because the

[10] The bankruptcy court's memorandum decision specifically states that it "memorializes and elaborates on the Court's ruling at the hearing." Memorandum Decision at 3. The bankruptcy court's oral ruling, however, did not further expand its reasoning, and the tentative ruling issued in advance of the hearing likewise contained very limited analysis.

[11] We agree that Salazar is distinguishable on its facts; it involved (a) a § 542 motion filed by the chapter 7 trustee in the debtors' converted case, not a motion by a chapter 13 trustee; and (b) tax refunds received by the debtors prior to conversion that they conceded to be property of their estate pursuant to § 541(a). Salazar, 465 B.R. at 877-78. Nonetheless, Salazar does support a conclusion that the Debtors were permitted to spend the refunded amounts for living expenses during the converted chapter 7 case.

[12] The bankruptcy court did not discuss or present analysis as to whether the funds continued to be property of the estate after conversion, during the chapter 7 case, or on reconversion.

- 9 -

Debtors were no longer in possession or control of the Refund at the time of reconversion, the Refund did not become property of the chapter 13 estate on reconversion.

We further determine that even if the Refund became property of the chapter 13 estate on reconversion, the Chapter 13 Trustee lacked standing to bring a motion under § 542. Thus, the bankruptcy court erred by granting relief under § 542.

**1. Property of the estate on reconversion.**

When the Debtors' case converted to chapter 7, § 348(f)(1)(A) defined the property of the chapter 7 estate as "property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." It is undisputed that the Refund consisted of postpetition plan payments made from the Debtors' postpetition earnings. And it is undisputed that the Chapter 13 Trustee remained in custody and control of the Refund on the conversion date. Thus, on the conversion date, the Refund was <u>not</u> a prepetition asset, was <u>not</u> in the "possession of" the Debtors, and was <u>not</u> under the Debtors' "control." As such, the Refund did not become property of the Debtors' chapter 7 estate. See <u>In re Michael</u>, 699 F.3d 305, 313 (3d Cir. 2012) ("property acquired post-petition that is in the Chapter 13 estate at the time of conversion is not property of the new Chapter 7 estate.").

It is not disputed that the Debtors received the Refund postconversion and in accordance with the Notice of Intent. The Debtors advised the bankruptcy court that they spent the Refund on living expenses during their chapter 7 case. At the time they

spent the Refund, it was not property of their chapter 7 estate, and no Bankruptcy Code provision prohibited their use of the Refund. The bankruptcy court's conclusion that Debtors had no right to spend the Refund, thus, was in error.

Upon reconversion to chapter 13, § 1306 defined property of this second chapter 13 estate. In relevant part, § 1306 provides that property of a chapter 13 estate includes, in addition to the property specified in § 541, "earnings from services performed by the debtor after commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first."[13] Thus, property of the second chapter 13 estate could include the Debtors' postpetition earnings and, thus, the Refund. Debtors, however, must have retained some interest in the Refund at the time of reconversion for it to constitute property of the second chapter 13 estate. To the extent Debtors spent the Refund, they no longer held any interest therein. See § 541(a) (property includes all "interests" of the debtor). Put another way, reconstituting the estate on reconversion does not change the nature of the asset when spent. The Refund, which was the Debtors' property during the chapter 7 case and spent by Debtors during the chapter 7 case, did not become property of the reconverted chapter 13 estate because it no longer existed. Therefore, the Refund is not appropriately subject to a § 542 order in the second chapter 13 case.

---

[13] Neither conversion, nor reconversion, effects a change in the date of "commencement of the case." See § 348(a).

**2. The Chapter 13 Trustee lacks § 542 standing.**

In a § 542 turnover action, the "property being sought is 'property that the trustee may use, sell, or lease under section 363 of this title." Shields v. Adams (In re Adams), 453 B.R. 774, 777 (Bankr. N.D. Ala. 2011). This necessary element of § 542 presents an insurmountable problem for the Chapter 13 Trustee. Under § 1303, a chapter 13 trustee is prohibited from using, selling, or leasing property of the estate. Rather, § 1303 provides that the debtor, "exclusive of the trustee," has the rights and powers of a trustee under § 363(b).

On reconversion, the Debtors became entitled under § 1306 to sole possession of property of the second chapter 13 estate, and under § 1303 they had the sole authority to exercise rights under § 363(b). If the Refund became an asset of the second chapter 13 estate upon reconversion, only the Debtors could use and control the Refund; the Chapter 13 Trustee could not compel turnover. She could object to their plan (they didn't intend to file one). She could request dismissal of their case (they wanted that to happen). What she could not do as a chapter 13 trustee was require them to turnover the Refund or any other asset under § 542 or to use any particular asset for a particular purpose under § 542. Therefore, the bankruptcy court erred as a matter of law when it granted the Chapter 13 Trustee turnover rights under § 542.

**B. Section 105(a) does not support turnover.**

We may affirm on any basis in the record. See Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC), 481 B.R. 34, 44 (9th Cir. BAP 2012). Because the

- 12 -

chapter 13 Trustee initially brought this motion under § 105(a), we also consider whether it supports affirmance here. We determine that it does not.

Section 105(a) provides, in relevant part, that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Despite this broad statement, "it is generally agreed that § 105 is not a roving commission to do equity or to do anything inconsistent with the Bankruptcy Code." Yadidi v. Herzlich (In re Yadidi), 274 B.R. 843, 848 (9th Cir. BAP 2002). As the Supreme Court recently observed, it is impossible to "carry out" the provisions of the Bankruptcy Code through actions that the Bankruptcy Code does not allow. Law v. Siegel, 571 U.S. ____, 2014 U.S. LEXIS 1784, *11 (2014). Here, the Chapter 13 Trustee attempts to use § 105(a) to achieve results that are directly contrary to the result required by other Bankruptcy Code provisions.

The Chapter 13 Trustee seeks control over the Refund, an asset that was properly turned over to the Debtors and properly spent by the Debtors. As discussed above, it is an asset that did not survive to become part of the second chapter 13 estate. But if it did, § 1306(b) mandates that: "[e]xcept as provided in a confirmed plan or order confirming a plan, the [chapter 13] debtor shall remain in possession of all property of the estate." Here, if the Refund became part of the second chapter 13 estate, there is no confirmed plan, and no plan is even contemplated. Thus, the Bankruptcy Code leaves control over the Refund - if it is an estate asset at reconversion - solely in the Debtors' hands. Requiring Debtors under § 105 to disgorge funds for any

reason (equitable or otherwise) is inconsistent with the provisions of § 1306.

Nor do we agree that the Chapter 13 Trustee mistakenly disbursed the Refund to the Debtors.  The interplay between §§ 348 (governing conversion) and 1326 (governing a chapter 13 trustee's retention or disbursement of plan payments) mandates this result.  See Viegelahn v. Harris (In re Harris), 491 B.R. 866 (W.D. Tex. 2013) (interpreting § 348(f)(1)(A), chapter 13 trustee was required to return to the debtor funds collected pursuant to a confirmed chapter 13 plan as of the date of conversion of the case);  In re Krahenbuhl, 2013 Bankr. LEXIS 2918 (Bankr. E.D. Wis. 2013) (funds acquired by the chapter 13 debtor postpetition and contributed toward his chapter 13 plan are not property of the chapter 7 estate and must be returned to the debtor upon conversion); In re DeSimone, 2013 Bankr. LEXIS 5121 (Bankr. N.J. 2013) (undistributed plan payments must be returned to the debtor on conversion after deducting the § 503(b) attorneys' fees allowed preconversion)(emphasis added).

Here, the bankruptcy court entered the Fee Order after entry of the Conversion Order albeit prior to return of the Refund to the Debtors.  Under these facts, the Chapter 13 Trustee was required to return the Refund to the Debtors.  See In re Clements, 495 B.R. 74, 76 (Bankr. E.D. Pa 2013) (where no order had been entered denying plan confirmation,[14] and § 503(b) attorney's fees were not allowed until postconversion, all postpetition assets had to be returned to the debtors on

---

[14]  Here, the bankruptcy court entered a memorandum decision that sustained plan objections and denied confirmation.

conversion to chapter 7); <u>In re Garris</u>, 496 B.R. 343, 348-49 (Bankr. S.D.N.Y. 2013) (§ 1326(a)(2) permits deduction from funds on hand of only those § 503(b) claims allowed as of the date of dismissal of a chapter 13 case, unless the bankruptcy court, for "cause," orders otherwise, pursuant to § 349(b)).[15]

## CONCLUSION

Based on the foregoing, we REVERSE the bankruptcy court's Turnover Order. Because we determine that the bankruptcy court erred in ordering turnover of the Refund or its value, the enforcement mechanisms contained in the Turnover Order do not survive and we order that the Firm immediately return any funds seized pursuant to the Turnover Order.

---

[15] The bankruptcy court relied, in part, on <u>In re Oliver</u>, 222 B.R. 272, 274 (Bankr. E.D. Va. 1998) for the proposition that attorneys' fees are to be paid prior to return of funds to debtor. <u>In re Oliver</u>, however, is distinguishable as it involved dismissal of a chapter 13 case in which attorneys fees were allowed by the court from funds on hand, simultaneously with the dismissal.